# JOHN T. CHENEY
## v.
## WILLIAM BARGE.

*Bankruptcy—Discharge as a Defense—New and Contingent Promise to Indemnify Surety—Pleading—Waiver of Objection—Oral Evidence—Time of Promise—Delivery of Letter.*

1. The promise by which a discharged debt of a bankrupt is revived may be an absolute or a conditional promise, but it must be clear, distinct and unequivocal.

2. Whether the plaintiff should declare specially upon a conditional promise is somewhat doubtful. But where the declaration consists of the common counts, and the conditional promise is set up in the replication, the defendant by rejoining waives the defects, if any, in the pleadings.

3.  A new promise, to bind a bankrupt, may be founded on a contingent liability, as that of a surety.

4.  In the case presented, it is *held:*  That oral evidence to show that when the note was given and when the letter was written and delivered there was no other transaction between the parties, was properly admitted to identify the claim in suit and show that the letter applied to it; and that the letter having been received through the mail after the filing of the petition, although written before, the promise contained therein is binding upon the defendant.

[Opinion filed March 20, 1888.]

Appeal from the Circuit Court of Lee County; the Hon. William Brown, Judge, presiding.

This is an action of assumpsit. The declaration consists of the common counts. The pleas are: 1st. The general issue. 2d. Discharge in bankruptcy. Replications to second plea: 1st. That cause of action accrued subsequent to adjudication of bankruptcy. 2d. That cause of action was not provable in bankruptcy. 3d. That defendant was not discharged in bankruptcy. 4th. New promise to pay if defendant lived and prospered, and that he did prosper. 5th. Ratification of promise after discharge and *similiter* to first plea. Rejoinders: 1st. That defendant did not promise after discharge. 2d. That defendant had not prospered, and *similiter* to rejoinders.

There was a jury trial in the Lee Circuit Court, and verdict and judgment were for William Barge, plaintiff below and appellee here, and, against John T. Cheney, defendant below and appellant here, for $304.53.

Appellant and appellee executed a promissory note to the Dixon National Bank for borrowed money, in which appellant was the principal debtor and received the entire consideration, and appellee was a mere security; and said note was as follows:

"$175.39.                    Dixon, Ill. Feb. 23, 1878.

"Ninety days after date we or either of us promise to pay the Dixon National Bank, or order, at their office, one hundred and seventy-five and 39-100 dollars, with interest at ten

per cent. after maturity, until paid, and fifteen per cent. attorney's fees if collected by suit.

"No. 9,953.   Due May 27th.

"JOHN T. CHENEY.
"WM. BARGE."

On the 28th day of August, 1878, the appellant wrote and mailed at Sioux City, Iowa, a letter addressed to appellee, at Dixon, Illinois, and said letter, omitting the day and place of date, address and signature, was as follows:

"FRIEND BARGE: I often think of the episode—I guess that is it—that occurred on the sidewalk near the Nachusa House on a Sunday evening, and as often think of the long-continued friendship that had existed between us. The only difference between us was, I knew that I was helpless to do anything for you, and you thought I might be, and perhaps was. If I live and am prospered no man who helped me (without remuneration) will be no poorer for me, if not otherwise. That is all there is of it. And if any man was to ask you if you believed in me, you would say 'yes,' and I know it. My mistake was in assigning to P. & Emerson. With kindest regards, I am yours truly."

This letter was received by appellee at Dixon, Illinois, by due course of mail, some three or four days after its date, or on or about the 31st day of August, 1878. At that time three or four days was the usual time required for a letter to come by mail from Sioux City to Dixon.

On the 29th day of August, 1878, appellant filed in the District Court of the United States for the District of Iowa, his petition in bankruptcy, and was adjudged a bankrupt, and was, on the 2d day of July, 1879, by the decree of said court, forever discharged from all debts and claims provable against his estate, and which existed on the 29th day of August, 1878, and a certificate of discharge in bankruptcy was duly issued to him. After the 23d day of February, 1878, there were no business relations between appellant and appellee other than those here involved; and at the date of the letter and of its receipt, and at the time of the adjudication in bankruptcy, and at the date of the payment of

the note by appellee, there was no other unsettled matter or indebtedness between them. The evidence tended to prove that appellant, since the date of his letter to appellee and his discharge in bankruptcy, had prospered in business at Sioux City and Missouri Valley Junction, and was the owner of real estate from which he could realized $75,000.

Messrs. CRABTREE & DIXON, for appellant.

In order to remove the bar created by a discharge in bankruptcy there must be a clear, distinct, unequivocal and express promise made to pay the debt. This letter nowhere refers to any debt owing by the writer to the person addressed; it contains no promise to pay anything. At the time it was written appellant was not the debtor of appellee. Then, and for more than a year afterward, appellee was simply his surety on a note payable at the Dixon National Bank. True, it was a contingent liability and one provable in bankruptcy in favor of the surety, but no mention whatever is made of it in this letter. It can not be told from the letter or from any other proof in the record that the writer intended to refer to the matter out of which this indebtedness arose. He asserts that a long-continued friendship had existed between them, and it may fairly be inferred that appellee had helped him, but in what manner he does not state. At the best it is a mere declaration of an intention, and is not an unequivocal promise to do anything. The act for which appellee now asks indemnification is not mentioned; the obligation is not identified; all of which are essentials indispensable to constitute a promise that will remove the bar of a discharge in bankruptcy. Allen v. Ferguson, 18 Wall. 1; Elwell v. Cumner, 136 Mass. 102.

A declaration by a discharged bankrupt that he was going to pay the particular debt as soon as he was able and that he was going to pay all his honest debts except some in the city, though expressive of an intention, does not constitute an engagement to pay sufficient to avoid the legal effect of his discharge. Yoxtheimer v. Keyser, 11 Pa. St. 364; S. C., 51 Am. Dec. 555.

In Dannan v. Gould, 141 Mass. 16, the debtor wrote: "I

wish I could give you some money, John, as you ask, but can not at present. I shall not take any notice of your abuse of me till I have paid you the amount I owe you, *which I shall surely do*, and after that we will have another settlement." But the court held the letter did not show the debtor intended to waive his discharge or to create a new obligation.

There must be an expression by the defendant of a clear intention to bind himself to the payment of the debt. The new promise must be distinct—unambiguous. The mere recognition or acknowledgment by a bankrupt of a debt which has been discharged by bankruptcy, does not create a legal obligation on him to pay the debt; the promise must be express. Porter's Adm'r v. Porter, 31 Maine, 169; Merriam v. Bailey, 1 Cush. 77. And payment by the bankrupt of part of the principal of the original debt does not revive the obligation of the remainder. White v. Cushing, 30 Me. 267; Stark v. Stinson, 23 N. H. 259. Nor does the payment of interest on the entire principal. Com. Inst. for Saving v. Littlefield, 6 Cush. 210 ; St. John v. Stephenson, 90 Ill. 82.

A debtor, after his discharge, wrote to his creditor : "I mean right; I will pay you something on account;" and "I shall pay you something as soon as possible." Held, not to take the debt out of the operation of the discharge. Biglow v. Norris, 139 Mass. 12.

It is well understood that less proof is required to revive a debt barred by the Statute of Limitations than one barred by bankruptcy. Willets v. Cotherson, 3 Ill. App. 644.

Yet, in a case of debt barred by the Statute of Limitations, it is said : "If there be no express promise, but a promise to be raised by implication of law from the acknowledgment of the party, such acknowledgment ought to contain an unqualified and direct admission of a previous subsisting debt, which the party is liable and willing to pay. If there be accompanying circumstances which repel the presumption of a promise or intention to pay, if the expressions be equivocal, vague and indeterminate, leading to no certain conclusion, but at best to probable inference, which may affect different minds in different ways, we think they ought not to go to the jury as evi-

dence of a new promise to revive the cause of action." Bell v. Morrison, 1 Pet. 362; Carroll v. Forsythe, 69 Ill. 127.

The expressions contained in the letter are "equivocal, vague and indeterminate, leading to no certain conclusion, but at best to probable inference, which may affect different minds in different ways," and for that reason ought not to go to the jury. Carroll v. Forsythe, 69 Ill. 127; Bell v. Morrison, 1 Pet. 362.

Mr. W. D. Barge, for appellee. ·

The new promise, in issue by the pleadings, with the occurrence of its conditions, is fully established by the evidence, and is amply sufficient to sustain this judgment.

The testimony of the plaintiff and the letter from the defendant clearly prove the new promise. And this oral evidence of the plaintiff is competent, and must be considered in connection with the letter, and the letter read, construed and understood in the light of it. "The plaintiff's testimony was rightly admitted for the purpose of showing that no other debt was due him from the defendant when the letter was written, and of identifying the claim in suit." Cook v. Shearman, 103 Mass. 21, 23. It appears from this evidence, that the plaintiff signed the note as surety, and paid it after the defendant was discharged in bankruptcy.

"No precise form of words is required to make a new promise." Hubbard v. Farrell, 87 Ind. 215, 217.

The promise contained in the defendant's letter is sufficient. Cook v. Shearman, 103 Mass. 21; Kingston v. Wharton, 2 Serg. & R. 207.

"A declaration by the bankrupt that he is able and willing to pay the debt, amounts to an express promise to pay it." Evans v. Carey, 29 Ala. 99; Dearing v. Moffit, 6 Ala. 776; Harris v. Peck, 1 R. I. 262; St. Johns v. Stephenson, 90 Ill. 82; Herndon v. Givens, 16 Ala. 261.

Slight evidence is sufficient to establish a new promise. Marshall v. Tracy, 74 Ill. 379.

A conditional promise will remove the bar of bankruptcy if the evidence shows the performance of the condition. St.

John v. Stephenson, 90 Ill. 82; 1 Pars. Cont. *309 (3d Ed.); Scouton v. Eislard, 7 Johns. 36.

A new promise made after the petition is filed and before the discharge in bankruptcy is granted, is sufficient. Katz v. Moessinger, 7 Ill. App. 536; Otis v. Gaflin, 31 Me. 567; Lerow v. Wilmarth, 7 Allen, 463.

In the case at bar, the new promise was made after the defendant filed his petition in bankruptcy. The letter containing the promise was written the day before, and received about two days after that petition was filed. The new promise was therefore made after the filing of the petition. A promise, like a contract, is made where mind meets mind, and if by letter, that is where the letter containing the promise is received by the promisee. 1 Pars. Cont. 406 (3d Ed.).

And if made before the filing of the petition in bankruptcy, the new promise is valid and the discharge is no defense to such promise.

"If a debtor, on the eve of bankruptcy, promise his creditor to pay the debt, *when he shall be able*, his certificate is no bar to a suit brought on the new promise." Kingston v. Wharton, 2 Serg. & R. 207.

Baker, J. In St. John v. Stephenson, 90 Ill. 82, it is held that the promise by which a discharged debt of a bankrupt is revived may be an absolute or a conditional promise, but that it must be clear, distinct and unequivocal. The same rule obtains in the Supreme Court of the United States, and in the courts of last resort in other States. The mere expression of an intention to pay the debt is not sufficient; but no precise form of words is required to make a new promise. An intention is but a purpose formed in the mind; but a promise is an express undertaking or agreement to carry that purpose into effect, and must be express, in contradistinction to a promise implied from an acknowledgment of the justness or existence of the debt. Hubbard v. Farrell, 87 Ind. 215, and cases there cited.

In Cook v. Shearman, 103 Mass. 21, the important expressions found in the letters written by the bankrupt were: "I ex-

pect to pay you all there is due you with interest to the time of payment, and I will certainly see to it that you are no loser by me. Early in July I hope to pay the amount due you, possibly sooner than that. I shall certainly do so as soon as possible. I shall see to it that you are not the loser for your courtesy." It is plain that the statements found in these letters of the expectations and hopes of the writer were mere expressions of intention, and were wholly inoperative to impart vitality to a dead indebtedness. The court held the debt of the bankrupt was revived, and speaking through Mr. Justice Gray, now an Associate Justice of the Supreme Court of the United States, said: "The statements in those letters that the defendant expects to pay the plaintiff all that is due to him, and hopes to be so situated as to send him the full amount of his bill, with interest, coupled with the assertions that he will see to it that the plaintiff does not lose by him, amounted to a distinct and unequivocal promise." It is manifest that the salient words to constitute the promise were those in which he undertook and agreed to see to it that the plaintiff did not lose by him.

In the case at bar, the words are: "If I live and am prospered, no man who helped me (without remuneration) will be no poorer for me, if not otherwise. That is all there is of it, and if any man was to ask you if you believed in me, you would say 'yes,' and I know it." Appellee helped appellant without remuneration by becoming his security for borrowed money, and this money he was legally bound to pay to the lender when called upon therefor, and afterward did pay. He would necessarily be the poorer for that help, unless appellant repaid him. Appellant assures appellee that no man who helped him, appellant, without remuneration, will be the poorer for him. The words used import and amount to a clear, distinct and unequivocal undertaking and promise. They are not a mere recognition and acknowledgment of an indebtedness. Nor are they simply the expression of the hopes, expectations and intentions of appellant. Cook v. Shearman, seems to be very much in point. In substance and in legal effect there can be no difference between the assertion that

one will see to it that a party does not lose by him, and the assurance that if he lives and is prosperous then such party will be no poorer for him—except that in the one case the undertaking is absolute and in the other it is conditional. In this case the assurance given is made emphatic and pointed by the use of these words: "That is all there is of it, and if any man was to ask you if you believed in me, you would say 'yes,' and I know it."

Many of the cases cited by appellant on this branch of the pending controversy are clearly distinguishab'e from the case at bar and are not in conflict with the views we have expressed. Others of them we are not inclined to follow. If language is to be construed as meaning what the words used plainly indicate, it would seem the expression "I shall not take any notice of your abuse of me till I have paid you the amount I owe you, which I shall surely do," is equivalent to the statement "I shall surely pay you the amount I owe you." We are wholly unable to comprehend upon what ground it can reasonably be held that such words do not amount to and constitute a plain and unequivocal promise to pay. Men in their ordinary business transactions would so understand them. To our minds, such language, *ex vi termini*, imports a promise and undertaking.

It is objected that the alleged new promise being a conditional promise, appellee should have declared specially upon such promise. There is some conflict in the authorities upon this point, and in this State, in respect to a conditional promise, it has not been expressly decided either way. In 1 Chit. Pl. 54, the doctrine is stated with some doubt; he says: "When the subsequent promise is effectual, it is sufficient to declare upon the original consideration, unless where the promise is conditional, in which case it seems to be necessary for the creditor to declare specially." In Wait v. Morris, 6 Wend. 394, it was held that where a conditional promise forms the basis of the suit, the plaintiff may either declare upon it specially, or set it forth in his declaration. Like decisions have been made by other respectable courts. In Marshall v. Tracy, 74 Ill. 379, no question in respect to a con-

ditional promise arose, and what the court there said hardly amounts to the expression of an opinion in regard to the point here in controversy. In St. John v. Stephenson, 90 Ill. 82, the court said: "The occurrence of the condition must be averred if the promise be conditional;" but there is nothing in the case to indicate that such averment, and the averment of the new promise itself, might not be set up in the replication.

But waiving this consideration, which is a matter of some doubt, appellant did not demur to this replication of a conditional new promise, but filed rejoinders thereto, denying both the making of the conditional new promise and the happening of the contingent event alleged therein. Assuming that by interposing a demurrer he could have compelled the plaintiff to so amend his declaration as to base his right of action stated therein expressly upon the new promise, yet by his not doing so, but on the contrary filing issuable rejoinders thereto, he must be considered as having elected to waive the defects and informalities in the pleadings. It is perfectly manifest from the pleadings, and the issues formed thereon and submitted to the jury, the latter could not have found a verdict for appellee without both the alleged new promise and the happening of the condition stated therein were duly proved at the trial. It would seem the defects in the pleadings, if any, are mere defects in matter of form, for it must be admitted that all the allegations necessary to sustain the action, verdict and judgment are found not only in the record, but in the pleadings of appellee. Whatever defects there are were waived by appellant, and such defects are added by intendment after verdict. See also, Secs. 3, 6 and 7 of the statute of amendments and jeofails.

Oral testimony was properly admitted by the trial court for the purpose of showing that when the note was given and when the letter was written and delivered, there was no other transaction or business between the parties; it was necessary in order to identify the claim in suit, and apply the letter to the subject-matter to which it related. Cook v. Shearman, *supra*, is directly in point. The same rule has been held in

this State.   Reed v. Ellis, 68 Ill. 206; Marshall v. Gridley, 46 Ill. 247.

It is urged that at the time the letter was written appellant was not the debtor of appellee; that then, and for more than a year afterward, appellee was simply his surety on a note payable to the Dixon National Bank.   If there was, in fact, no indebtedness between them, then it would seem the principle of equality should require it to be held the debt arose after bankruptcy, and the discharge was no bar.   But the claim of appellee against appellant was in existence and provable in his favor, against the estate of the bankrupt when the petition in bankruptcy was filed.   Bump's Bankruptcy, 7th Ed., 647, Sec. 5070, R. S. U. S.   The relation of debtor and creditor between them commenced at the date of the note, and not from the time the surety made payment.   Choteau v. Jones, 11 Ill. 300.   A new promise to bind a bankrupt may be founded on a contingent liability, for instance, that of a security for his principal debtor before payment of the debt.   Earle v. Olinn, 2 Exch. 71.   See Hare and Wallace's notes to Trueman v. Fenton, 1 Smith's Lead. Cas., 6 Am. Ed., 968.

It is insisted upon by appellant that as the letter was written and mailed on the 28th day of August, 1878, and the petition in bankruptcy was not filed until the 29th day of the same month, the promise contained in the letter, if any, could not affect a discharge granted upon the proceeding begun subsequent to the day on which the letter was so written and mailed.   The certificate of discharge takes effect from the commencement of the proceedings in bankruptcy and the promise to pay to be binding as a new promise must be made by the debtor after the commencement of such proceedings. If a new promise to pay is binding, so that it can be enforced by the courts, it must be upon the ground it is a contract. When appellant wrote the letter at Sioux City, Iowa, and mailed it, properly addressed to appellee at Dixon, Illinois, he made the postal authorities his agents to carry and deliver the letter.   He must be presumed to have had in contemplation that the letter would be carried to Dixon by due course of mail, and would reach there in the usual time required at that

time for a letter to go by mail from Sioux City to Dixon. It did in fact reach there in such usual time and was received by appellee on or about the 31st day of August, either that day or the next succeeding day. This was just what appellant expected and intended. It is in substance as though appellant had, on the day of the receipt of the letter, met appellee and made to him the promise by word of mouth. Mind did not meet mind until the letter was received by appellee. This is not a case where there was delay and hinderance and a failure to have the letter reach the proper party at the proper time. When such cases arise, it will be time enough to dispose of the extreme and supposititious cases suggested by counsel in their argument.

In the view we have taken of the case, it is wholly unnecessary to consider the exceptions taken to the instructions of the court.

We find no error in the record; the judgment is affirmed.
*Judgment affirmed.*